CONSUMERS CREDIT SERVICE, Inc. v. CRAIG.

No. 937.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 21, 1950.

Decided Sept. 13, 1950.

C. Robert Cross, Washington, D. C., with whom Jack N. Steinberg, Washington, D. C., was on the brief, for appellant.

John H. Coffman, Washington, D. C., with whom Elmer B. Collins, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Consumers Credit Service, Inc., a company licensed under the Maryland Small Loan Law, sued in the Municipal Court for the District of Columbia to recover a balance of principal and interest claimed to be owing on a note signed by Howard L. Shelton and Robert M. Craig as comakers. Shelton not appearing, summary judgment was granted against him and no appeal has been taken from that judgment. Robert M. Craig defended the suit and also

interposed a counterclaim for money paid by him to the loan company on account of principal and interest. The trial court held that the transaction violated the Maryland Small Loan Law and gave judgment against the loan company on its claim against Craig; it also gave judgment for Craig on his counterclaim. The company prosecutes this appeal.

The Maryland Small Loan Law[1] permits the licensing of companies authorized to loan $300 or less, and authorizes such licensees to charge a maximum of 3% per month. Section 15(a) provides, so far as here applicable, that interest shall not be payable in advance or compounded and shall be computed on unpaid balances only. Section 15(b) provides: "If interest, or charges in excess of those permitted by this Article shall be charged, contracted for, or received, the contract of loan shall be void and the licensee shall have no right to collect, or receive any principal, interest or charges whatsoever."

The trial judge found that the loan company had violated the Maryland law in three respects: (1) because admittedly it had collected $2.50 for insurance; (2) because the loan company had collected more than two months' interest in one or more months (such interest was then in arrears); and (3) because the defendants had not received the face value of the loan, which was $200, but either $30 or $37 less than that amount.

We have concluded that the trial court was in error as to the insurance item, but it was admitted at oral argument here that the provisions of the Maryland law in this respect were not stressed at trial. Section 16A provides that licensees may require life insurance on the life of the borrower in an amount not to exceed the amount of the contract and that such licensees may receive and transmit premiums on such insurance on behalf of the borrower. This was done in the present instance, and there was no evidence that the company charged any commission or other compensation in connection with insurance. This error, however, does not affect the result, for reasons stated below.

The borrowers, it is admitted, were constantly in arrears in payment of principal and interest called for by the loan contract. The result was that, for example, in one month when a payment of $16 was made they were charged with interest for 75 days, and $15 of the payment was charged to interest and only $1 credited to principal. The borrower argues in effect that because the language of the statute provides that only interest for one month may be collected in that month therefore the balance of any payments made in such month should have been credited to principal even though at the time of the payment interest for as long as 75 days was due. His argument would result in crediting payments to principal although interest was far overdue. We find no Maryland decisions on the question and council have called to our attention no decisions in point from any jurisdiction. Since we have concluded that the third ground on which the trial court held the loan illegal is fully sustained, we deem it unnecessary to pass upon this particular issue.

The two borrowers testified that while they had signed a promissory note for $200 and had also signed a loan voucher acknowledging receipt of a cash balance of $197.50 ($200 less $2.50 for insurance) nevertheless they had actually received less than that amount. One of them testified that they had received "about" $170, and the other testified that the amount was "about" $163 or $164. Both testified that the amount received "could not possibly have been more" than $170. Each testified that at the time the loan was made he was informed that the "deductions were for interest and insurance." The only contrary evidence was that of the employee of the company who made the loan that he did not remember the exact transaction but that he had never paid to a borrower less than the amount called for by the loan voucher and note. The company introduced no cancelled checks for the amount paid the borrowers.

1. Article 58A, Public General Laws of Maryland, as amended 1943 and 1947.

The loan clearly violated the act if only $170 was advanced on a $200 note on which the maximum interest of 3% a month was charged. The act forbids the collection of interest in advance. And we are bound by the finding of fact of the trial court if the testimony that $170 or less was received was admissible. Appellant's principal argument is that the receipt of such evidence violated the parol evidence rule in that it directly contradicted the terms of the loan receipt.

While the parol evidence rule, particularly with respect to negotiable instruments, generally prevents contradiction of the terms of a written instrument by parol evidence, there is an exception to such rule, in Maryland and elsewhere, when the suit is between the original parties to the instrument and when a claim of usury or violation of a statute is involved.

In Montague v. Sewell, 57 Md. 407, 414, the court said: "So far as the transaction in question is evidenced by the legal instruments executed by the parties, it is *prima facie* valid and free from objection. The form taken is in all respects legal, and the instruments used fail to disclose any taint of usury. * * * Courts, therefore, have recognized the necessity of disregarding the form, and examining into the real nature of the transaction; and if that be in fact a loan, no shift or device will protect it. And as in such cases the original intention of the parties can seldom be arrived at except by resort to matters *de hors* the particular instruments of writing executed by them, extrinsic evidence must be received to show the real nature and intent of the transaction." The court in Tyson v. Rickard, 1810, 3 Har. & J.Md., 109, 114, 5 Am.Dec. 424 said: "In the investigation of such questions [usury] the original intention of the parties must often be come at by matter *de hors* the particular instrument of writing executed between them, otherwise the act of assembly would be a dead letter * * *."

In Annotations on Small Loan Laws by F. H. Hubachek (1938), it is said, at p. 154: "Two well established rules with reference to the admissibility of evidence facilitate the proof of usury. When usury is in issue parol evidence is admissible to vary the terms of a written instrument by showing the time, nature and details of the transaction * * *."

The same author, at p. 173, said: "Illustrations of chicanery in money lending are the dating of notes prior to delivery of the money to the borrower and the use of notes containing a larger principal amount than that lent. * * * They are utilized principally for the purpose of making the proof of facts difficult."

In Houghton v. Burden, 228 U.S. 161, 169, 33 S.Ct. 491, 493, 57 L.Ed. 780, the Supreme Court, citing Scott v. Lloyd, 9 Pet. 418, 9 L.Ed. 178, said: " * * * All of this evidence was excepted to as contradicting the written agreement and was admitted over objection. Where the inquiry is whether the contract is one forbidden by law, it is open to evidence *dehors* the agreement to show that, though legal upon its face, it was in fact an illegal agreement. Otherwise the very purpose of the law forbidding the taking of usury under any cover or pretext would be defeated. The defense is one which the debtor may make even though it contradicts the agreement."

In Scott v. Lloyd, supra, 9 Pet. at p. 448, 9 L.Ed. 178, the Supreme Court made the following significant statement: " * * * If an express stipulation for the repayment of the sum advanced be indispensable to the existence of usury, he must be a bungler indeed, who frames his contract on such terms as to expose himself to the penalties of the law."

We hold, therefore, that when, as here, the defense is the illegality of the transaction or usury and the suit is between the original parties to the transaction, parol evidence may be received to explain the actual transaction even though such evidence contradicts a written instrument. The weight to be given such evidence is, of course, within the province of the trier of the facts.

We think we should mention the additional judgment of the trial court that defendant Craig recover from the com-

pany the $96 which he personally paid on account of principal and interest (in addition to other sums paid by the other defendant). In some states, prior to the passage of small loan laws, the courts decided that the parties would be left where the court found them and that neither party could collect where usurious contracts were involved. However, in Scott v. Leary, 1871, 34 Md. 389, it was held that under the common law a party who has paid excessive interest may recover it back in an action for money had and received on the theory that the payment of usurious interest is not a voluntary payment. This limiting decision, however, was rendered before the passage of Maryland's Small Loan Law wherein the legislation declared that if interest or charges in excess of those permitted by law are charged, contracted for or received, the contract of loan is void and the licensee shall have no right to collect or receive any principal, interest or charge whatsoever. Decisions in other states since the so-called small loan laws were passed have varied but are not helpful here because the statutes themselves differ.[2] In the present case, although appellant assigned this part of the judgment as error, it did not mention it in its brief. We consider the assignment of error, therefore, as abandoned[3] and hence do not reach it. The entire judgment is

Affirmed.

2. Rosenblum v. Family Finance Corporation, 179 Misc. 1050, 39 N.Y.S.2d 230, affirmed, 1943, 266 App.Div. 872, 43 N.Y.S.2d 636; Personal Finance Co. of New York v. Gross, 1939, 170 Misc. 166, 9 N.Y.S.2d 801; Howard v. Confidential Loan Plan, 1940, 125 N.J.L. 74, 13 A.2d 492. In the latter case it was held that the borrower could recover all sums which he paid or returned to the lender if any unauthorized exaction is made, but the statute, N.J.S.A. 17:10-14, specifically provides that "the borrower shall be entitled to recover from the lender any sums paid or returned to the lender by the borrower on account of or in connection with the loan." This specific provision does not appear in the Maryland statute.

3. Eide v. Traten, D.C.Mun.App., 73 A.2d 522, Municipal Court of Appeals' Rule 35(4, 5)